IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TRAVIS KENNEDY, | |
| Plaintiff, | 4:24-CV-3193 |
| vs. | MEMORANDUM AND ORDER |
| CHS, INC., | |
| Defendant. | |

The plaintiff, Travis Kennedy, used to work for the defendant, CHS, Inc. He asserts he was discriminated and retaliated against after a workplace accident in violation of the Americans With Disabilities Act (ADA), 42 U.S.C. § 12112 *et seq.*, and the Nebraska Fair Employment Practice Act (NFEPA), Neb. Rev. Stat. § 48-1101 *et seq*. He also asserts he was retaliated against for reporting the defendant to the Occupational Safety and Health Administration (OSHA) in violation of the NFEPA and Nebraska common law. He further asserts claims for intentional and negligent infliction of emotional distress. This matter is before the Court on the defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(4), (b)(5), and (b)(6). Filing 13. The motion will be granted.

## I. STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. While the Court must accept as true all facts

pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party, *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012), a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. *Iqbal*, 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id*. at 679.

## II. BACKGROUND

The plaintiff worked for the defendant beginning June 2021. Filing 17-1 at 1.[1] He alleges that in September 2022, one of his coworkers in Roseland, Nebraska, was enveloped in a grain elevator. Filing 1 at 1. The plaintiff was the first to respond, but his coworker died. The plaintiff reported safety problems about equipment and training around the grain elevator to the defendant and to OSHA before the accident. When OSHA investigated, the plaintiff alleges he provided information that was adverse to the defendant's interest.

As a result of the accident, the plaintiff suffered "extensive mental injuries that impaired his abilities to work." Filing 1 at 2. He went on medical leave. In December 2022, he asked to be placed in a lower-paying driving position "so he could return to work without the emotional strain of working at the Roseland facility." Filing 1 at 2. He alleges the defendant denied his

---

[1] The plaintiff provided his charge of discrimination filed with the Nebraska Equal Opportunity Commission, filing 17-1, that gives more context to his allegations. The Court can consider this record without converting the defendant's motion into one for summary judgment. *E.g., Blakley v. Schlumberger Tech. Corp.*, 648 F.3d 921, 931 (8th Cir. 2011).

2

request. *But see* filing 17-1 (plaintiff asked his manager and "corporate" for the truck driver position, but he never heard back from them).

The plaintiff alleges that he was forced to resign on January 23, 2023, when his short-term disability ended. *See* filing 17-1 at 1. He asserts he was discriminated against on the basis of a disability, and retaliated against for participating in an OSHA investigation. *See* filing 1 at 3. He also seeks damages for intentional and negligent infliction of emotional distress "due to [the defendant's] failure to provide proper safety equipment and training." Filing 1 at 2.

## III. DISCUSSION

### *Service of Process*

The defendant argues dismissal is warranted under Rules 12(b)(4) and (b)(5) because the plaintiff failed to serve the defendant within 90 days of filing the complaint. Filing 14 at 2; *see Adams v. AlliedSignal Gen. Aviation Avionics, 74 F.3d 882, 884 n.2 (8th Cir. 1996)* (distinction between (b)(4) and (b)(5) is "often blurred," and it is appropriate to present and analyze service issues under both rules).

The plaintiff filed this lawsuit on October 22, 2024 (*see* filing 1), and the defendant was not served until January 31, 2025 (filing 7 at 2), 101 days later. Fed. R. Civ. P. 4(m) requires a court to dismiss an action if a plaintiff fails to serve a defendant within 90 days of filing, unless the plaintiff shows good cause for the failure. If the plaintiff does not show good cause, a court may, in its discretion, grant an extension for the time of service upon a showing of "excusable neglect." *See, e.g., Clark v. Sarpy Cnty.,* 8:17-cv-405, 2018 WL 3339537, at *2 (D. Neb. June 15, 2018). "Excusable neglect" is an elastic, equitable concept that depends on the particular facts of a case. *See Kurka v.*

3

*Iowa Cnty.,* 628 F.3d 953, 959 (8th Cir. 2010). The reason for delay is generally a key factor, though courts also consider prejudice to the defendant, length of delay, impact on judicial proceedings, and whether the parties acted in good faith. *See id.*

The plaintiff's attorney represents that he "mistakenly neglected" to ask for summons, and, after the Court's order to show cause (filing 4), he promptly effected service. *See* filing 5; filing 8; filing 17 at 13. The defendant is not prejudiced, nor are the proceedings impacted, by an 11-day delay. Counsel for the plaintiff admitted he made a mistake; the Court is satisfied that his neglect is excusable. The motion to dismiss on this basis is denied.

### Disability-Related Claims

On to the defendant's substantive arguments for dismissal. The plaintiff appears to allege that he developed a disability as a result of the grain elevator accident, and his employer's failure to accommodate that disability resulted in a constructive discharge. He appears to claim that the defendant did not accommodate him in retaliation for participating in an OSHA investigation.

To plead a failure-to-accommodate claim under either the ADA or the NFEPA, a plaintiff must provide factual allegations about the nature and consequences of the asserted disability. *Trambly v. Bd. of Regents of the Univ. of Neb.*, 145 F.4th 922, 927 (8th Cir. 2025); *Brown v. Conagra Brands, Inc.*, 131 F.4th 624, 627 (8th Cir. 2025). A complaint must contain facts about what the disability is, how the plaintiff is impaired, what limitations he has, or what he is unable to do. *Brown,* 131 F.4th at 627 (citing 42 U.S.C. § 12102(1), Neb. Rev. Stat. § 48-1102(9)).

The plaintiff has not stated a disability-related (failure-to-accommodate) claim. He only pled the legal conclusion that he suffered "extensive mental injuries that impaired his abilities to work." *See* filing 1 at 2. Even inferring

4

some limitations based on the alleged "emotional strain" of working near the grain elevator, the plaintiff has not provided sufficient detail about his impairments so as to state a claim. *See Brown,* 131 F.4th at 627. The plaintiff's failure-to-accommodate claim will be dismissed.

### *Retaliation Claims*

The plaintiff appears to assert the "failure to accommodate" constituted a constructive discharge. He appears to allege that his employer required him to work at his normal worksite, which he was emotionally unable to do, so he was forced to resign. *See* filing 1 at 2. He claims the defendant retaliated against him for reporting safety concerns to OSHA, violating the public policy of the state of Nebraska, and the NFEPA. *See* filing 1 at 3.

To state a claim for retaliation under either theory, a plaintiff must assert facts that, if proven, would show (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) a causal link exists between the two events. *See Haffke v. Signal 88, LLC,* 947 N.W.2d 103, 111 (Neb. 2020) (NFEPA); *Riesen v. Irwin Indus. Tool Co.,* 717 N.W.2d 907, 915 (Neb. 2006) (public policy).

Proximity in time between the protected conduct and the adverse action is typically the beginning point to prove causation for both theories of relief. *See Riesen,* 717 N.W.2d at 916; *Brown,* 131 F.4th at 627-28. A plaintiff sufficiently pleads a retaliatory motive by alleging facts demonstrating proximity in time, satisfactory work performance, negative remarks, or other facts that can support an inference of a causal nexus. *See Brown,* 131 F.4th at 628.

Assuming without deciding that the plaintiff's conduct was protected by either the NFEPA or Nebraska public policy, or that the "failure to accommodate" amounted to a constructive discharge, there's nothing in the

5

complaint to support an inference that the adverse employment action was motivated by the OSHA investigation. The only causal link is that the plaintiff resigned after the investigation. He makes no allegations about the defendant's conduct, how he was treated before or after his OSHA reports, how similarly-situated employees were treated, whether the employer failed to adhere to established company policies, or any other facts that may give rise to an inference of an illegitimate motive.

A claimant's burden to show a prima facie case is not onerous, *see Riesen, 717 N.W.2d at 916-17*, but a plaintiff must allege *some* suspicious circumstance that could lead to an inference of an unlawful motive. *See Brown,* 131 F.4th at 628. The plaintiff has failed to do so. His claims for unlawful retaliation will therefore be dismissed.

### Infliction of Emotional Distress

The complaint asserts that the defendant either intentionally or negligently inflicted emotional distress upon the plaintiff "due to their failure to provide proper safety equipment and training." Filing 1 at 2. He alleges that he suffered purely mental, nonphysical, damages.

The legal path to recovering purely emotional damages is limited.[2] Negligent[3] infliction of emotional distress (NIED) is not a separate cause of

---

[2] This is true of nonphysical injuries arising out of and in the course of employment. *See Lopez v. Catholic Charities of the Archdiocese of Omaha,* 998 N.W.2d 31, 36 (Neb. 2023). The parties did not address, so the Court has not considered, whether worker's compensation provides the exclusive remedy for the plaintiff's alleged injuries. *But see id.* at 41.

[3] The plaintiff, by not briefing it, appears to have abandoned his claim of intentional infliction of emotional distress (IIED). *See* NECivR 39.2(c). His argument is solely focused on whether he sufficiently pled he was in the "zone of danger," which is required in NIED, but not IIED, cases. *Compare Hamilton,* 659 N.W.2d at 328-29, *with Syring v. Archdiocese of Omaha,* 9 N.W.3d 445, 458 (Neb. 2024).

action, but a theory of recovery for a negligence claim. *Larsen v. Sarpy Cnty. Sch. Dist. 77-0027*, 25 N.W.3d 185, 202 (Neb. 2025). It requires the general elements of negligence (duty, breach, and causation), plus two additional elements: (1) the plaintiff suffered medically-significant emotional distress so severe that no reasonable person could have been expected to endure it, and (2) the plaintiff was a bystander with a familial relationship to the victim, or the plaintiff was a direct victim of the negligence, within the "zone of danger." *See Hamilton v. Nestor*, 659 N.W.2d 321, 328-29 (Neb. 2003).

In *Larsen*, the plaintiff alleged her 11-year-old son with special needs disappeared while in the care of his school. 25 N.W.2d at 826. Her complaint's allegations that she "suffers from now and must be treated for severe emotional trauma and distress," and "the trauma of wondering what horrors have befallen [the plaintiff's] disabled child," sufficiently pled a medically-significant emotional injury. *See id.* at 845.

The plaintiff in this case merely pled the workplace accident caused him "extensive mental injuries that impaired his abilities to work." Filing 1 at 2. The complaint does not provide any additional facts to support an inference that the "mental injuries" suffered are "so severe that no reasonable person should be expected to endure" them. *See Hamilton*, 659 N.W.3d at 329; *Larsen*, 25 N.W.3d at 845; *cf. Syring*, 9 N.W.3d at 458 (describing mental injuries in IIED cases). For much the same reasons he has failed to plead the existence of

---

The plaintiff did not respond to the defendant's argument that the alleged conduct was not sufficiently severe or outrageous to state a claim for IIED. *See* filing 14 at 7; filing 17 at 6-7. The Court agrees that the allegations do not meet the "high hurdle for establishing outrageous conduct." *See Syring*, 9 N.W.3d at 458. And for the reasons explained herein, he has not pled the existence of a *severe* mental injury. The plaintiff's IIED claim will therefore be dismissed.

a disability, his allegations fail to indicate severe, medially-diagnosable emotional distress, and so fail to state a claim to recover for NIED.

## IV. CONCLUSION

The plaintiff has failed to state a claim upon which relief can be granted. His conclusory assertions cannot survive the defendant's motion to dismiss. The plaintiff's reliance on Nebraska procedural law to cure his pleading, *see* filing 17 at 1-2, is unavailing, as this is federal court, and the Federal Rules of Civil Procedure apply. The defendant's motion will be granted, and the plaintiff's complaint will be dismissed. Accordingly,

IT IS ORDERED:

1.    The defendant's motion to dismiss (filing 13) is granted.

2.    The plaintiff's complaint (filing 1) is dismissed.

3.    A separate judgment will be entered.

Dated this 18th day of February, 2026.

BY THE COURT:

John M. Gerrard
Senior United States District Judge